BLANCHARD (OWEN v.). See Case No. 10,-628.

---

## Case No. 1,514.

### BLANCHARD et al. v. PUTTMAN et al.

[2 Bond, 84; 3 Fish. Pat. Cas. 186.][1]

Circuit Court, S. D. Ohio. March, 1867.[2]

PATENTS — COMBINATION — INFRINGEMENT — EVIDENCE—PRESUMPTIONS—RIGHTS OF LICENSEE.

1. The patent of Thomas Blanchard, of December 18, 1849, reissued November 15, 1859, is for a combination of the parts composing the wood-bending machine described in his specification.

2. A patent is prima facie for a new and useful invention. The plaintiff is entitled to the benefit of this presumption, and so is the defendant if he claim under letters patent.

[See Knight v. Baltimore & O. R. Co., Case No. 7,882; Parker v. Stiles, Id. 10,749; Latta v. Shawk, Id. 8,116; Morse Fountain Pen Co. v. Esterbrook Pen Manuf'g Co., Id. 9,862; Judson v. Cope, Id. 7,565; Johnson v. Root, Id. 7,409; Wing v. Richardson, Id. 17,869; Brodie v. Ophir Silver Min. Co., Id. 1,919; Jordon v. Dobson, Id. 7,519; Cook v. Ernest, Id. 3,155; Crouch v. Speer, Id. 3,438; Proctor v. Brill, 4 Fed. 415.]

[See note at end of case.]

3. A licensee is entitled to offer in evidence the letters patent of his licensor as a defense to an action against him for infringing a prior patent.

[See note at end of case.]

4. The patent of John C. Morris, of March 11, 1856, reissued May 27, 1862, for improvements in wood-bending machines, explained in its relation to the patent of Thomas Blanchard.

5. Blanchard's patent is for a wood-bending machine with a rotating form, and does not include a stationary form.

6. A patent for a particular structure intended to accomplish a particular end does not import an exclusive right to every possible mode of accomplishing the same end.

[See Whitney v. Mowry, Case No. 17,592; Waterbury Brass Co. v. Miller, Id. 17,254.]

[7. The question of the identity of two machines depends, not on their appearance or form, but on whether the alleged infringing machine is a mechanical equivalent of the other, or whether it produces the same result by substantially the same principle or mode of operation.]

[See Brooks v. Jenkins, Case No. 1,953; Eames v. Cook, Id. 4,239; Parker v. Stiles, Id. 10,749; Crompton v. Belknap Mills, Id.

---

[1] [Reported by Samuel S. Fisher, Esq., and by Lewis H. Bond, Esq., and here compiled and reprinted by permission.]

[2] [Reversed by the supreme court in Blanchard v. Putman, 8 Wall. (75 U. S.) 420.]

3,406; Judson v. Cope, Id. 7,565; Swift v. Whisen, Id. 13,700; Converse v. Cannon, Id. 3,144.]

At law. This was an action on the case [by Alonzo V. Blanchard, John D. Blanchard, and Franklin Blanchard against Antoine Puttman, Conrad Weaver, and John Bittinger], tried before the court and a jury, for the infringement of letters patent [No. 6,951] for an "improvement in bending wood," granted to Thomas Blanchard, December 18, 1849, reissued [No. 853] November 15, 1859, and extended December 18, 1863. [Verdict for defendants.] The material portions of the specification and claim were as follows:

"In the machines heretofore contrived for the purpose of bending timber, the bed-piece upon which the stick was placed, and the lever by which the bending was effected, have not been so connected together as to hold them at fixed distances from each other, and consequently when the piece of timber being bent was of varying stiffness, or when it contained knots, it was liable to rise up and leave the mold whenever there was a weak place in the stick, and if the first part of the operation was successful and the part bent was followed by a stiffer portion, the former was liable to be thrown out of place by the more rigid and unyielding portion, and thus an imperfect curve was the result. And these difficulties were not remedied by the employment of flexible bands of metal, or other devices intended to prevent the breaking of the timber on the outside of the bend. The above-mentioned difficulties were in most cases enhanced, if not caused, to a considerable extent, by the fact that the power by which the timber was bent, was applied to the timber itself as a means of communicating the power to the parts to be bent. While in the improvements to be hereinafter described the timber is passive, and the bending is effected by power applied through the mechanism employed. These machines were also defective in another particular, if the attempt should be made in them to apply any considerable pressure to the end of the timber to be bent, instead of consolidating the material and causing the fiber thereof to be condensed, such pressure would only increase the tendency to bulge up the timber from the mold and break it. All these difficulties have been remedied by my improved method of bending, which I will now proceed more particularly to describe. The operation of the machine is as follows: The mold lever is thrown open at right angles with the bench, as shown in fig. 2; the timber of handle G is placed with its round end between the chain and the mold and in contact with the bar J, the key L is then driven in (fig. 5), to hold it in its place, but still allow it to slide endwise sufficient to upset; the draft-screw I is then turned to bring the end of the handle and end of the chain firm against the mold; the set-screw K is then

turned up to bring the beam E against the back of the chain to give it proper support; the tender then applies his hand to the upsetting screw H, and turns it forward and presses the handle endwise, driving the rounded end firm against the slide J, which is connected with the first link of the chain. This operation tightens the chain, and completes the preparations for the bending process; power is then applied to bring the mold lever round, which draws the sliding beam forward with the handle as the curve is formed, the upsetting screw co-operating with the chain and mold lever, to keep the plow handle up to the bar J, so as to insure the bend at the extreme end while the fiber in the inner part of the curve is consolidated, and that which forms the outer part of the curve is prevented from breaking. During the operation it is usually found necessary to relax the upsetting screw a little to prevent the timber on the inside the curve from crippling, when the mold lever is brought home to its place; the spring-catch N takes hold of the end of the lever and prevents it from going back, and the work is completed. That part of the plow-handle which is bent is of an oval form, and is turned or wrought in proper shape before it is bent; it is formed deepest and thickest transversely to the curve; consequently the links or blocks that form the chain are made hollow to conform to the outside of the curve, the lever-mold having a corresponding hollow to fit the inside. The chain may be dispensed with in bending large curves with flat sides, such as felloes for wheels. Where the sides have flat surfaces a metallic strap may be substituted, and a number of pieces can be bent at once in the same mold, or a whole plank of suitable thickness may be bent at once and be sawed into felloes afterward; in that case there would be no side twist or winding in the operation of bending, but if they are sawed into squares before being bent the wind or side crook may be prevented by placing a number together, and the side spring may be prevented by side clamps to keep them in the right direction while they are being bent; these side clamps may extend around the mold, which will prevent the side movement while receiving the proper curve, either cylindrical or elliptical, or of any figure required, and instead of actuating the mold by a lever, cog-wheels may be used and any species of power applied to drive the machine. The upsetting power must be given by the screw or other mechanical power when the timber is first placed in the mold and while in its straight form, by screwing or pressing against the ends of the timber, and care should be taken to prevent its crippling, by having clamps attached to the sliding bed. The amount of end-pressure should be sufficient to condense the fibers on the inside of the curve without crippling the timber, and to prevent the fibers on the outside of the curve from being drawn

apart. When the timber is in danger of being crippled by the end-pressure, which particularly occurs in short curves or where the stick is thick, the upsetting screw should be relaxed gradually, as the bending proceeds, to a sufficient extent, to relieve the timber of the excessive end-pressure and prevent the crippling, as before stated. Having thus described my improved method of bending wood, and having shown one form of machine embodying the same, adapted to the bending of plow-handles, it is obvious that the same method may be applied to the bending of a great variety of forms, adapted to a great variety of purposes, and that the details of the mechanism may be greatly varied without departing from the principles of my invention. What I claim as my invention, and desire to secure by letters patent, is my improved method of bending wood, substantially as hereinbefore described."

The infringement alleged was in the use, by defendants, of a machine for bending chair-stuff, felloes, etc., constructed by John C. Morris, under his letters patent. See Morris v. Royer [Case No. 9,835].

George M. Lee, for plaintiffs.
S. S. Fisher, for defendants.

LEAVITT, District Judge. Charge of the court:

This suit, gentlemen, is brought by the plaintiffs as the assignees of the administrator of Thomas Blanchard.

It is based on a patent for an improvement in bending wood, issued to said Blanchard, December 18, 1849, reissued to him November 15, 1859, and extended December 18, 1863, and assigned to plaintiffs. The declaration alleges that the defendants have infringed the exclusive right under this patent thus vested in plaintiffs.

No question as to the title of the plaintiffs arises in this case.

The defendants are licensed under one John C. Morris; that is, they use and have a license to use a wood-bending machine which they say is covered by a patent issued to Morris, March 11, 1856, and reissued to him May 27, 1862.

The defendants insist, by way of defense: First, that the Blanchard patent is void for want of novelty; and, secondly, that the machine constructed under Morris' patent, and used by them, does not infringe the patent of Blanchard, and that therefore they are not liable in this action.

I will first call your attention to the question of the novelty of Blanchard's invention. You are doubtless familiar with the principle of patent law, that the novelty of an invention is an essential element of a valid patent. Patent rights are only granted upon the theory that the thing discovered, and for which the party asks for an exclusive right, is new as well as useful; in other words, that it is the invention of the party who claims a patent for it, and was not known before his invention.

In this connection I may say, as a principle of law familiar to every one at all conversant with the subject, that the emanation of a patent from the proper authorities of the government affords a presumption that the invention patented is new and original with the patentee. This presumption arises from the fact that all patents must be issued with certain formalities, and that the officers charged with the administration of the patent laws are required very astutely to investigate every claim. The applicant is, moreover, obliged to swear that he is the original inventor of that for which he asks a patent; and it is only upon a compliance with these requisitions of law that the commissioner of patents is authorized to make the grant.

But it is proper to state that while this presumption does exist, it is competent for one charged with an infringement to show that, in point of fact, the invention was not new, and that the party ought never to have had a patent for it; and if he succeeds in making this proof, he establishes the invalidity of the patent, and it is a mere nullity. Now, it is claimed, under the first issue to which I have referred, namely, the novelty of the invention of Blanchard, that there is evidence of other machines in use prior to the date of his invention, which anticipated, or were substantially the same as that for which he procured a patent. This is a question for the jury, for it is a question of fact depending upon the evidence.

To substantiate the position taken by the defendants impeaching the novelty of Blanchard's invention, there has been a good deal of testimony adduced, and various wood-bending machines and models have been exhibited to the jury.

I shall merely refer to these without attempting to analyze or dissect them.

There is one patented to E. Reynolds in July, 1835, and another patented to Jonathan Mulford in the same year. Evidence has also been introduced of a rejected application made by one May, in 1846, for a patent for a wood-bending machine; and there is also evidence of a machine patented to Abel Gardner, in 1849, for bending hames; also, of a machine not patented, which was first constructed by one David Gans, and used, as it appears, in 1845, and for some years subsequently, in the state of Illinois.

Now, in regard to several of these machines, you have the models before you, and I may remark here that models are oftentimes the very best evidence that can be adduced. There is nothing, perhaps, more satisfactory upon questions involving the identity of several mechanical structures than the exhibition of the machines or accurate models of them. They are silent witnesses, but they are usually very reliable.

In reference to the Gans machine, one of

the witnesses, an expert, introduced on the part of the defendants, says it is substantially the same as Blanchard's, and involves essentially the same principles and mode of operation. But other witnesses express a different opinion. It is for the jury to pass upon that question, and they will do it of course upon the evidence which they have before them.

I may state here a familiar principle: that this question of identity, as has been very truly stated by the counsel, does not depend upon the appearance or form of the two structures claimed to be identical. It depends simply upon the question whether they are the same in their mode and principle of operation, and whether one is a mechanical equivalent for the other. For it is obvious that there may be two machines very dissimilar in structure and appearance, which yet act upon precisely the same mechanical principles.

The question for the jury, in such case, is to ascertain, if possible, whether the two structures are, in all substantial particulars, the same; or whether there is, or is not, a substantial difference in their mode of operation.

Upon this subject, in relation to these various machines or structures, the jury will probably conclude that none of them combine all the elements of the Blanchard invention. The Gans machine is, perhaps, the only one that will create any doubt in the minds of the jurors on this question. It will be for them to say whether that combines all the elements or parts of the Blanchard improvement.

Without detaining the jury further upon the question of novelty, I may remark that where a machine has been long in public use, under a patent which has existed for a number of years, unchallenged and undisputed, a jury should hesitate before coming to the conclusion that the patent was void on the ground of want of novelty. I mean by this that a jury should be clearly satisfied in their own minds that the invention in controversy was anticipated by something known before the date of the patent, in order to come to the conclusion that the patent was void on the ground adverted to.

It becomes necessary, gentlemen, that the court should give a construction to the claims of the Blanchard patent with a view to this question of novelty. One point in controversy in regard to it, as I understand it, is, whether it is for an entire machine, or a machine as an entirety, or whether the patent is to be construed as a patent for a combination; that is, a combination of different parts so arranged as to produce a new and useful result.

In my view of this question, the patent to Blanchard can only be regarded as a patent for a combination of different parts or elements.

It is called in the patent itself, "a new and useful improvement in bending wood." In the specification it is designated as "a new and improved method of bending wood." The specification, which has been read in your presence, is exceedingly elaborate and minute.

The patentee refers to the fact that in all the prior modes of bending wood there were great and manifest defects. He does not claim that he was the original inventor of the art of bending wood, or of the separate parts of the machine which he describes. The claim is that he has, by a union of those parts, improved upon all methods before known for that purpose.

Now, if I am right, in my construction of this patent—if it is for a combination of the various parts or elements of the structure described—there is applicable to this case this principle, which it becomes important for the jury to consider, namely, that there can be no infringement of such a patent unless the person charged with the infringement has appropriated and used all the parts of the combination.

To illustrate my meaning: A person obtains a patent for a machine containing three different elements in combination. Those three elements, separately, are none of them new, but the patentee, by his ingenuity and study, has contrived to combine them so as to produce a new and useful result, and that is a patentable subject under our patent laws.

But one charged with an infringement of that combined machine is not liable, unless he has used all of the three parts that constitute the combination. If he takes one of them only, or two of them, leaving out the third, it is not an infringement. These are very familiar principles, and, I suppose, will not be controverted. So, on the other hand, if the patent to Blanchard is for a combination it is not impeached for want of novelty, unless the jury find that the machines exhibited or proved have all the elements or parts of the Blanchard machine.

I come now to the question of infringement, which I have partially anticipated in the remarks which I have already made. This, like that of novelty, is a question exclusively for the jury, depending altogether upon the evidence.

It is for the plaintiffs to establish, to the satisfaction of the jury, the fact of infringement; and this involves directly the question of the identity of the Blanchard machine and the Morris machine. Are they substantially, in their principle and mode of operation, alike?

I may remark here that both these parties are patentees, and the presumption equally applies to both, in relation to the novelty and utility of their inventions. There is a presumption from the issuance of a patent to Morris, years after the date of the Blanchard patent, that he had invented something different from the invention for which a pat-

ent had been previously granted to Blanchard; for, if the commissioner had come to a different conclusion, it would have been his duty to have rejected the application.

The first claim of Morris' patent is for a combination composed of three distinct elements. It reads as follows: "A wood-bending form, to which timbers are made to conform by bending them from the center or inner end of the desired curve outward, when used in combination with abutments or clamps, to prevent or regulate end expansion, and levers or handles, or their equivalents, to guide the bending, substantially as described."

The second claim is for "a stationary or poised wood-bending form in combination with the cords, levers, and drum, or their equivalents, and the eccentric clamp, or its equivalent, in the manner and for the purposes set forth."

The third is as follows: "In combination with the stationary form, levers, and abutments, I claim the employment of hooks, or hooks and pins, or their equivalents, that shall embrace the ends of the wood, to restrain the wood in shape and permit the removal of the abutments after each operation."

He says, in the beginning of his specification: "The machines for bending wood may be divided into two principal groups or classes; the first including all machines in which the bending process commences at one end of the wood, and is continued in the direction of the other; and the second including those in which the form or mold is first applied at or near the center of the piece to be bent, and the bending process is continued from that point toward each end, which I call bending outward." And then after making this classification, he goes on to say which class of machines he regards as the superior. In a part of his specification he says: "Having thus fully described my improvements, I do not wish to be understood as claiming them in connection with the machines for bending wood where the bending is effected by the rotation of the form, but what I claim as new," etc., and then follow the claims which I have already read.

Of that machine, described by Morris, patented to him, and used by the defendants, the jury have before them what is admitted to be a correct model. There is some contradictory testimony in regard to its identity with machines made under the Blanchard patent. There are two gentlemen who have testified as experts, Mr. Hibberd and Mr. Doane, who say that they regard them as substantially the same. On the other hand, there are three witnesses for the defendants, Mr. Knight, Mr. Renwick, and Mr. Morris, who state distinctly and explicitly that they regard them as essentially different in their mode of operation, and as involving wholly different principles in their action.

The jury having the models before them, with the aid of the testimony of the experts, will be able to decide whether they are substantially the same in principle.

I will state very rapidly some of the points in which it is claimed by the counsel for the defendants that there is a substantial difference between the two structures.

In the first place, it is claimed that the Morris machine bends from the center to outer end, whereas the Blanchard machine bends from the end inward. The jury have seen the operation of these machines, and are doubtless prepared to say whether, in that respect, the two machines are alike.

It is also claimed that the application of the power, in the operation of bending, is different in the two machines, and that the effect upon the timber bent by these two methods is different; that in timber bent under the Morris patent there is less disturbance of the fibers of the wood; that bending from the center outward to the end leaves the fibers more firmly set than they are by the operation under the Blanchard invention. If the jury should be satisfied of this difference in the operation of the two, it will be for them to say whether it does or does not constitute a substantial difference in the principle of the machines.

It is also contended that there is a substantial difference in this: that it is one of the main elements of the invention patented to Blanchard, that there is provision made for end relaxation when the end pressure is too great, and that, upon the principle and theory of the Morris machine, there is no necessity for this relaxation, and therefore no provision is made for it.

Another difference very strongly insisted upon by counsel for the defendants, and worthy of the consideration of the jury, is in regard to the form of the mold. Now, it is insisted, on the part of the plaintiff, that the stationary mold is fairly to be included within the claim of the Blanchard patent. Not only does it include, the counsel contends, the rotating form or mold, but also, by a fair construction, the stationary form or mold. Upon that point, from the best consideration I have been able to give to the question, I am clearly of the opinion that by no fair construction of the Blanchard patent can it be held to comprehend a claim for a stationary form or mold. It is unreasonable to suppose that Blanchard had anything of that kind in his mind when he was preparing his specification. It would naturally be expected, if it were a part of his conception, he would have said, in so many words, that though he gave the preference to the rotating form, yet he intended to embrace also the stationary form. But we look in vain throughout the entire instrument for any intimation that he ever thought of a stationary form, while all that he does say relates to a rotating form.

I make this brief statement of my construc-

tion of the Blanchard patent in this particular, that the counsel for the plaintiff may have the full benefit of my ruling. It belongs, legitimately, to the court to decide whether the patent, by a fair construction, embraces the claim for a stationary mold or form; and I announce distinctly, as my opinion, that it can not be so construed.

Mr. Lee. I ask your honor to say to the jury, that if an equivalent is substituted by the defendants for any part of the Blanchard machine, it is an infringement of his patent.

THE COURT. The idea I intended to convey to the jury was, that if they found the Morris machine to be substantially the same, or a mechanical equivalent for the other, then they would come to the conclusion that the two machines were identical in principle and operation. There is one principle true, beyond all question, that a patent for a particular structure, intended to accomplish a particular end, does not necessarily import an exclusive right to every possible mode of accomplishing the same end. The doctrine is simply this, as stated in the opinion of the supreme court, read in the hearing of the jury, that in order to make out the fact of infringement there must appear to have been a substantial identity; that the parts of the machine which are claimed to be an infringement of the patented machine must appear, to the satisfaction of the jury, to be substantially the same; that is, that the same result must have been produced by substantially the same principle or mode of operation. If there is a difference in this respect, then it goes to establish the want of identity between the structures. I will now briefly recapitulate the points to which you are to direct your attention. First, is the invention, this combination patented to Blanchard, new and original? If the jury answer this question in the affirmative, their next inquiry would be, whether that combination has been infringed by these defendants; in other words, whether the Morris structure is identical, in principle and operation, with that of Blanchard.

I have no doubt that Thomas Blanchard, now deceased, was an ingenious mechanic, and a man of much more than ordinary inventive talent. I have no doubt that the machine that he invented, and for which he obtained a patent, is a valuable invention, creditable to him and useful to the public. And I am equally clear that Morris, in his machine, has exhibited inventive talent of a high order, and has produced a useful and practical wood-bending machine. It is to be regretted that these parties did not permit each one to go in the enjoyment of his grant under his particular patent, and that it should have been found necessary to resort to litigation to settle their rights.

It is understood that the plaintiffs claim nominal damages only.

The jury found a verdict for the defendants.

[NOTE. This case was reversed by the supreme court on the grounds—First, that the court erred in admitting in evidence the patent granted to Morris, May 27, 1862, which was offered by defendants as the foundation for the introduction of evidence to show that the machine or machines used by them were constructed by them under a license from the patentee in accordance with the specifications and claims of that patent as reissued, as its admission presented an immaterial issue on the question of infringement, which was not involved in the pleadings, and therefore calculated to mislead the jury by withdrawing their attention from the real subject in controversy; second, that the admission of testimony on the part of defendants to prove the existence and use in 1858, in Illinois, of a machine for bending plow handles, for the purpose of showing an anterior public use, was likewise erroneous, defendants having failed to comply with the fifteenth section of the patent act (5 Stat. 123), requiring a defendant who defends on previous invention, knowledge, or use of the thing patented, to give notice of "the names and places of residence of those whom he intends to prove to have possessed a prior knowledge of the thing, and where the same had been used." Mr. Justice Clifford, who delivered the opinion, after assigning the foregoing reasons as grounds for reversal, proceeded: "Compliance with that provision being a condition precedent to the right of the defendant to introduce such evidence under the general issue, it necessarily follows that the onus probandi is on him to show that the required notice was given to the plaintiff thirty days before the trial; and, if he fails to do so, he cannot introduce any evidence to controvert the novelty of the patent. * * * The letters patent, when introduced by the plaintiffs, afforded a prima facie presumption that the assignor of the plaintiffs was the original and first inventor of the improvement; and, as the defendants had not given to the plaintiffs the required notice that they intended to offer evidence at the trial to overcome that presumption, they had no right to introduce any such evidence, and it necessarily follows that the court had no right to submit any such question to the jury." Blanchard v. Putnam, 8 Wall. (75 U. S.) 420.

[Patent No. 6,951 was granted to Thomas Blanchard, December 18, 1849, and was reissued November 15, 1859 (No. 853).]